DEAN HANSELL, STATE BAR NO. 93831
dhansell@dl.com
MARK J. NAGLE, STATE BAR NO. 248873
mnagle@dl.com
DEWEY & LEBOEUF LLP
333 South Grand Avenue
Suite 2600
Los Angeles, California 90071-1530
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

HEATHER L. CAPELL, Not Admitted in California
hcapell@dl.com
BOAZ I. GREEN, Not Admitted in California
bgreen@dl.com
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Suite 1100
Washington, DC 20005
Telephone: (202) 986-8000
Facsimile: (202) 986-8102

Attorneys for Plaintiff
THE LOS ANGELES GAY AND LESBIAN
COMMUNITY SERVICES CENTER

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Los Angeles Gay and Lesbian Community Services Center,<br><br>Plaintiff,<br><br>vs.<br><br>Internal Revenue Service,<br><br>Defendant. | Case No. CV06-6122-DSF (FMOx)<br><br>PLAINTIFF THE LOS ANGELES GAY AND LESBIAN COMMUNITY SERVICES CENTER'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND LITIGATION COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>Date: January 22, 2008<br><br>[Declarations of Dean Hansell, Dorothy Black, Mark Nagle, Heather Capell, Boaz Green, Barrett Litt and John Quinn filed concurrently] |

1

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, at such time as the matter may be heard if a hearing is ordered in this matter, before the Honorable Dale S. Fischer, United States District Judge, in Courtroom 840 of the United States District Court, Roybal Federal Building and Courthouse, 255 East Temple Street, Los Angeles, California, Plaintiff the Los Angeles Gay & Lesbian Community Services Center will and hereby does move for an order establishing the amount of attorneys' fees and costs under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E).

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, declarations and exhibits, all pleadings and papers filed in this action, and upon such evidence as may be presented at a hearing of this motion.

Dated: January 23, 2008

Dean Hansell
Mark J. Nagle
Heather L. Capell (not admitted in California)
Boaz I. Green (not admitted in California)
DEWEY & LEBOEUF LLP

By: _Dean Hansell /nym_

Attorneys for Plaintiff
**THE LOS ANGELES GAY AND LESBIAN COMMUNITY SERVICES CENTER**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE NO.**

I. INTRODUCTION .................................................................................................... 1

II. SUMMARY OF FACTS ......................................................................................... 2

III. ARGUMENT............................................................................................................ 5

    A. The Center is Eligible for Attorneys' Fees and Litigation Costs Because it has "Substantially Prevailed" in the Litigation.......................... 6

        i. The Center's Filing of this Legal Action Was Reasonably Necessary to Obtain the Information Sought.................................... 7

        ii. The Center's Filing of this Legal Action Caused the Delivery of the Requested Information............................................................. 8

        iii. The Center "Substantially Prevailed" Under *Buckhannon* Based on this Court's Order Requiring the IRS to Conduct Additional Searches for Documents. ............................................. 10

    B. The Center is Entitled to Attorneys' Fees Because its Action Benefits the Public and its Interest in the Requested Information is Not Commercial or Private in Nature. ........................................................ 10

        i. The Center's Action Benefits the Public .......................................... 11

        ii. The Center Has Neither Derived a Commercial Benefit, Nor Has it Furthered a Private Interest In Obtaining The Requested Information................................................................. 12

    C. The Center is Entitled to Its Lodestar Fees ............................................... 13

        i. The Hours Expended In This Litigation Are Reasonable.............. 14

        ii. Counsel's Hourly Rates Are Reasonable ....................................... 16

    D. The Center is Entitled to Its Reasonable Costs ......................................... 18

IV. SUMMARY OF THE FEES AND COSTS CLAIMED.................................... 18

V. CONCLUSION........................................................................................................ 21

i

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3   *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) ......................................................14

4   *Birkland v. Rotary Plaza, Inc.*, 643 F. Supp. 223 (N.D. Cal. 1986)…..................16

5   *Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978) ........................................11

6   *Blum v. Stenson*, 465 U.S. 886 (1984) ................ ……………………………16

7   *Buckhannon Bd. & Care Home v. W. Va. Department of Heath &*

8      *Human Res.*, 532 U.S. 598 (2001)..............................................................7, 10

9   *Cazalas v. DOJ*, 709 F.2d 1051 (5th Cir. 1983) .....................................................13

10  *Chalmers v. Los Angeles*, 796 F.2d 1205 (9th Cir. 1986) .................................14, 16

11  *Church of Scientology of California v. Harris*, 653 F.2d 584

12     (D.D.C. 1981) .............................................................................................7, 8

13  *Church of Scientology of California  v. U.S. Postal Serv.*,

14     700 F.2d 486 (9th Cir. 1983) .......................................................6, 8, 10, 11, 12

15  *Church of Scientology Western United States v. IRS*, 769 F. Supp. 328

16     (C.D. Cal. 1991).............................................................................................8, 9

17  *Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977)....................................5, 11, 12

18  *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 644 F. Supp. 551

19     (D. Md. 1986) .....................................................................................................17

20  *Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992)....…….16

21  *Exner v. FBI*, 443 F. Supp. 1349 (S.D. Cal. 1978),

22     *aff'd*, 612 F.2d 1202 (9th Cir. 1980)..................................................6, 8, 14

23  *Exner v. FBI*, 612 F.2d 1202 (9th Cir. 1980)...........................................................11

24  *Fenster v. Brown*, 617 F. Supp. 740 (D.C. Cir. 1979)............................................12

25  *Goldstein v. Levi*, 415 F. Supp. 303 (D.D.C. 1976)............................................6, 7

26  *Guam Contractors Association v. U.S. Department of Labor*,

27     570 F. Supp. 163 (N.D. Cal. 1983)..................................................................8

28  *Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993) ...............................………16

*Halperin v. Dep't of State*, 565 F.2d 699 (D.C. Cir. 1977).........................................7

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .............................................................13

*Jordan v. Multnomah County*, 815 F.2d 1258 (9th Cir. 1987) ................................14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) .............................14

*Long v. IRS*, 932 F.2d 1309 (9th Cir. 1991)..........................................................6, 13

*Miller v. U.S. State Department*, 779 F.2d 1378 (8th Cir. 1985) .............................9

*Missouri v. Jenkins*, 491 U.S. 274 (1989)...........................................…………17

*Nationwide Building Maintenance, Inc. v. Sampson*, 182 U.S. App.

    D.C. 83 (D.C. Cir. 1977) ................................................................................12

*Northcross v. Bd. of Ed. of Memphis City Schs.*,

    412 U.S. 427 (1973).......................................................................................5

*O'Neill, Lysaght & Sun v. Drug Enforcement Admin.*,

    951 F. Supp. 1413 (C.D. Cal. 1996)..................................................6, 12, 14

*Perkins v. Mobile Housing Board*, 847 F.2d 735 (11th Cir. 1988) ........…………14

*Powell v. Department of Justice*, 569 F. Supp. 1192 (N.D. Cal. 1983)...................6

*Rosenfeld v. FBI*, 859 F.2d 717 (9th Cir. 1988)......................................................6

*Tax Analysts v. DOJ*, 965 F.2d 1092 (D.C. Cir. 1992).............................................12

*U.S. v. $12,248 U.S. Currency*, 957 F.2d 1513 (9th Cir. 1991) .............................6

*United Ass'n of Journeymen & Apprentices of the Plumbing &*

    *Pipefitting Industrial, Local 598*, 841 F.2d 1459 (9th Cir. 1988) ................12

*Weatherhead v. U.S.*, 112 F. Supp. 2d 1058 (E.D. Wash. 2000)..........................6, 7

*White v. City of Richmond*, 713 F.2d 458 (9th Cir. 1983) ....................…………16

**FEDERAL STATUTES**

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)......................1, 5,6

**LEGISLATIVE MATERIALS**

*Freedom of Information Act and Amendments of 1974* (P.L. 93-502),

    Source Book: House Comm. on Gov't Operations, Senate Comm.

    on the Judiciary, 94th Cong., 1st Sess. at 227 (1975) ............…………13

iii

H.R. Rep. No. 1380, 93rd Cong., 2d Sess. 10 (1974)............ ..........................12

1      **MEMORANDUM OF POINTS AND AUTHORITIES**

2      **I.     INTRODUCTION**

3          Plaintiff, the Los Angeles Gay and Lesbian Community Services Center (the

4      "Center"), is eligible for, and entitled to, attorneys' fees and litigation costs, incurred

5      in its litigation with Defendant Internal Revenue Service ("IRS"), under the Freedom

6      of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E) and now moves for an award of

7      such fees and costs.  On March 21, 2005, the Center sent separate information

8      requests under 5 U.S.C. § 552 of FOIA to five IRS locations, seeking documents

9      related to its application for 501(c)(3) tax-exempt status.  In violation of its duties

10     under the FOIA, the IRS failed to conduct any search for responsive documents until

11     after the Center was forced to file suit on September 26, 2006.  Further, it was not

12     until January of 2007 (20 months after the FOIA requests were sent and 4 months

13     after the suit was filed) that the IRS produced any responsive documents.

14     Additionally, as this Court found in its August 27, 2007 Order Denying Defendant

15     IRS's Motion for Summary Judgment ("the Order"), even the searches that the IRS

16     conducted after the litigation commenced were inadequate under FOIA.  This Court

17     therefore ordered the IRS to conduct additional searches for documents.

18          Because the Center was forced to bring this action in order to receive a response

19     to its FOIA requests and because the IRS failed to conduct an adequate search for

20     responsive documents even after the litigation commenced, *pro bono* counsel for the

21     Center has devoted significant attorney time, and incurred significant litigation costs

22     in representing the Center in this matter.  Counsel's services included, among other

23     things: drafting and filing the Complaint, communicating with the Center about

24     developing a strategy, retrieving and producing documents to the IRS, reviewing the

25     IRS's document productions, conducting 30(b)(6) depositions of two IRS employees

26     in Washington, D.C., responding to a late-filed IRS Motion for Summary Judgment,

27     preparing for trial, preparing for and attending two telephonic settlement conferences,

28     and negotiating the language of the Court ordered stipulation.  The Center now moves

1  for an order awarding attorneys' fees and litigation costs incurred by its *pro bono*
2  counsel.

3      **II.    SUMMARY OF FACTS**

4          On March 21, 2005, the Center, through its attorneys, LeBoeuf, Lamb, Greene
5  & MacRae LLP (now Dewey & LeBoeuf LLP), sent FOIA requests to IRS offices in
6  Cincinnati, Ohio ("Cincinnati Office"), Ogden, Utah ("Ogden Office"), Fresno,
7  California ("Fresno Office"), Laguna Niguel, California ("Laguna Office"), and
8  Washington, D.C. ("Washington Office") seeking documents related to its application
9  for 501(c)(3) tax-exempt status, the original denial letter, subsequent ruling letter
10 granting tax-exempt status with certain restrictions, and the reissued ruling letter
11 removing these restrictions.  (Order at 2.)  The Center did not receive any responsive
12 documents from the IRS for over 18 months.  During this period, Center's counsel sent
13 letters to IRS offices urging them to respond to the Center's FOIA requests, but no
14 responsive documents were received.  (April 11, 2005 letter from Dean Hansell to
15 Kathlyne Morris; April 13, 2005 letter from Dean Hansell to Marla McKenzie,
16 attached as Ex. 1 to Declaration of Mark Nagle in Support of Plaintiff's Motion for
17 Attorneys' Fees and Litigation Costs ("Nagle Decl.").)  Thus, the Center was forced to
18 sue the IRS on September 26, 2006.  (Order at 2.)  The IRS admits that it did not
19 conduct a search for documents related to the Center's FOIA request until after this
20 litigation was filed.  (Mikolashek 5/10/07 Deposition at 110:22-114:6, Ex. 21 to
21 Declaration of Mark Nagle in Opposition to Defendant's Motion for Summary
22 Judgment.; Declaration of Adrienne Mikolashek in Support of Defendant's Motion for
23 Summary Judgment ¶¶ 12-17 (pages 5-6) ("Mikolashek Decl.").)

24          After the Center submitted its FOIA requests, the IRS's Ogden, Fresno, and
25 Laguna Offices, in violation of FOIA, declined to conduct the required searches and
26 instead merely referred the FOIA requests to the Exempt Organizations Determination
27 Office in Cincinnati.  (Order at 2-3.)  The Ogden, Fresno, and Laguna Offices took no
28 further action on the Center's requests.  (*Id.* at 2.)  Even after the Center filed the

1  lawsuit, the IRS initially conducted searches of only its Washington and Cincinnati

2  Offices. (*Id.* at 3.) The IRS's search of its Washington Office located 29 pages of

3  responsive documents, which it turned over to the Center on January 3, 2007, nearly 4

4  months after the litigation commenced. (*Id.*) Because the Center was organized and

5  located in California, John Bailey, a Supervisory Internal Revenue Agent in the

6  Cincinnati Office, asked the IRS's office in El Monte, California ("El Monte Office")

7  if any documents that should have been transferred to the Cincinnati Office had been

8  retained there. (*Id.* at 3.) He was told that no such documents were located in the El

9  Monte Office. (*Id.*) The IRS, however, failed to provide a detailed declaration

10  describing the search conducted at the El Monte Office. (*Id.* at 6.)

11      In the IRS's responses to discovery requests on February 12, 2007, the IRS

12  agreed in writing to produce supplemental search declarations to the Center within 10

13  days, which it failed to provide within the time specified. It was not until March 28,

14  2007, that the IRS produced any of the promised supplemental search declarations

15  meant to potentially obviate the need for depositions. However, at that time, the IRS

16  failed to produce a declaration for Adrienne Mikolashek, who coordinated the

17  searches. In the absence of sufficient declarations detailing the searches that the IRS

18  conducted, the Center proceeded with 30(b)(6) depositions of IRS designees in

19  Washington, D.C. These depositions required counsel to involve additional attorneys

20  in its local Washington, D.C. office. The IRS did not inform the Center's counsel that

21  it would be providing two deponents and did not inform counsel of their identities

22  until a day before the deposition. Moreover, to accommodate the schedules of the

23  IRS's designees, Mr. Bailey and Ms. Mikolashek, counsel for the Center agreed to cut

24  short its deposition time with Ms. Mikolashek and schedule a second session with her.

25  At the second session on May 10, 2007, the IRS produced another 4 responsive

26  documents to the Center (Declaration of Dean Hansell in Opposition to Defendant's

27  Motion for Summary Judgment ¶ 10.)

28

1    At the Local Rule 7-3 conference of counsel on June 20, 2007, the Center
2    detailed for the IRS why it needed additional information regarding the searches
3    conducted and requested that the IRS provide supplemental declarations to assist the
4    Center in determining the adequacy of the searches conducted.  The IRS's attorney
5    said that they intended to file a motion for summary judgment and have a court
6    declare that the search conducted was adequate.  In a letter sent to the IRS on June 22,
7    2007, counsel for the Center urged the IRS not to file a motion on the adequacy of the
8    search and instead provide the requested declarations to help establish the adequacy of
9    the search conducted.  (June 22, 2007 Letter from Dean Hansell to Gerald Role,
10   attached as Ex. 2 to Nagle Decl.)  However, the IRS proceeded to file a late motion for
11   summary judgment, arguing that it conducted a reasonable search for documents and
12   thereby discharged its duties under FOIA, which the Center was forced to oppose.
13   (Order at 4.)  This Court denied the IRS's motion in its August 27, 2007 Order, finding
14   that the IRS's "own evidence suggested that the search conducted was not reasonable."
15   (*Id.* at 8.)  This Court found, among other things, that responsive documents may be
16   located "either in offices to which [the Center] directed its request or in the offices of
17   IRS senior management."  (*Id.* at 7-8.)  Consequently, this Court, in the Civil Minutes
18   of the August 27, 2007 Hearing on Defendant's Motion for Summary Judgment,
19   ordered that the IRS conduct further searches for the requested documents pursuant to
20   a joint stipulation to be entered into by the Parties.
21   In order to facilitate the Parties' compliance with this Court's Order, the Center
22   sent a proposed stipulation to the IRS on September 12, 2007, based largely on the
23   language of the Order.  The Center's main objective in drafting the stipulation was to
24   ensure that the additional searches the IRS would conduct would be both adequate and
25   well documented, such that any future disputes regarding the IRS's compliance with
26   its statutory obligations to respond to the Center's FOIA requests would be averted.
27   The Center anticipated that, based on the Order's clarity about the searches to be
28   conducted, the Parties would readily agree to the stipulation's language.  However,

4

despite the Center's efforts to expedite the process, the IRS took over 2 months to agree to the filed stipulation's language.  During this period, significant attorney time was devoted to activities related to the stipulation, including lengthy telephonic meetings between the Parties and the exchange of numerous drafts of the stipulation. On November 15, 2007, over 2 months after the Court's August 27, 2007 Order, the Parties were finally able to file a stipulation as to the searches to be conducted.

The Parties have attempted to settle the issue of attorneys' fees and litigation costs prior to the Center's filing of this motion.  The Parties had an initial telephonic settlement conference on September 11, 2007, with Magistrate Judge Fernando Olguin, where the IRS appeared willing to enter settlement negotiations on the issue of attorneys' fees and litigation costs.  Therefore, at the telephonic settlement conference Magistrate Judge Olguin instructed the Center to provide a settlement demand letter to the IRS, to which the IRS was to respond.  Magistrate Judge Olguin scheduled a further settlement conference for October 4, 2007 (Civil Minutes of September 11, 2007 Telephonic Settlement Conference 7, attached as Ex. 3 to Nagle Decl.)  The Center and the IRS had a final telephonic settlement conference with Magistrate Judge Olguin on October 4, 2007, where the Parties agreed that a settlement of the issue was not possible.  (Civil Minutes of October 4, 2007 Telephonic Settlement Conference, attached as Ex. 4 to Nagle Decl.)

## III.   ARGUMENT

The Center is both eligible for, and entitled to, attorneys' fees and litigation costs under 5 U.S.C. § 552(a)(4)(E).  Under FOIA, "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E).  This fee-shifting provision helps ensure that agencies properly perform their duty to disclose government information to the public, thereby encouraging a policy of open government. *See, e.g.*, *Northcross v. Bd. of Educ. of Memphis City Schs.*, 412 U.S. 427 (1973) (fee-shifting provision encourages

1  individuals to seek judicial relief for the purpose of vindicating national policy);

2  *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1363-1364 (D.C. Cir. 1977) (fee-shifting provides

3  incentive to government agencies to comply with FOIA requests); *Goldstein v. Levi*,

4  415 F. Supp. 303, 305 (D.D.C. 1976) (fee-shifting provision helps ensure that

5  agencies properly perform their duty to disclose government information to the

6  public.  In order to be awarded attorneys' fees, a complainant must establish both (1)

7  eligibility for and (2) entitlement to fees.  *See Long v. IRS*, 932 F.2d 1309, 1311-13

8  (9th Cir. 1991); *see also O'Neill, Lysaght & Sun v. Drug Enforcement Admin.,* 951

9  F.Supp. 1413, 1418 (C.D. Cal. 1996).

10      *Pro bono* counsel is authorized to receive attorneys' fees and litigation costs

11  under Section 552(a)(4)(E) of FOIA.  *See Rosenfeld v. FBI*, 859 F.2d 717, 723 (9th

12  Cir. 1988); *see also U.S. v. $12,248 U.S. Currency*, 957 F.2d 1513, 1521 (9th Cir.

13  1991) (award of attorneys' fees to *pro bono* counsel appropriate as means to ensure

14  adequate legal representation to litigants); *Powell v. Dep't of Justice*, 569 F. Supp.

15  1192 (N.D. Cal. 1983) (counsel entitled to compensation over lodestar amount to

16  compensate for risk assumed when representing a client *pro bono*).

17      A.   **The Center is Eligible for Attorneys' Fees and Litigation Costs**

18           **Because it has "Substantially Prevailed" in the Litigation**

19      The Court may assess against the United States reasonable attorneys' fees and

20  other litigation costs reasonably incurred in any case under 5 U.S.C. § 552(a)(4)(E) in

21  which the complainant has "substantially prevailed." *Church of Scientology of*

22  *California v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983) ("if the facts show

23  that the plaintiff has substantially prevailed on his or her FOIA action, then such party

24  is eligible for an award of attorney's fees"); *accord Weatherhead v. U.S.*, 112 F. Supp.

25  2d 1058, 1064 (E.D. Wash. 2000).  A party "substantially prevails" where (1) the

26  FOIA action was "reasonably necessary" to obtain the information sought; and (2) the

27  action had a "substantial causative effect" on delivery of the information. *Exner v.*

28  *Federal Bureau of Investigation*, 443 F.Supp. 1349, 1353 (S.D. Cal. 1978), *aff'd*, 612

F.2d 1202 (9th Cir. 1980); *accord Long*, 932 F.2d at 1313.  However, a plaintiff need not win complete relief to have "substantially prevailed."  A prevailing party is one who has been awarded some relief by a court.  *See, e.g., Buckhannon Bd. & Care Home v. W. Va. Dep't of Heath & Human Res.*, 532 U.S. 598, 603 (2001).[1]  Even where no documents are released, a plaintiff may be deemed to have "substantially prevailed" if the suit compels an agency to comply with the law.  *Halperin v. Dep't of State*, 565 F.2d 699, 706 n.11 (D.C. Cir. 1977).

Here, the Center is eligible for attorneys' fees and litigation costs because this litigation was "reasonably necessary," and had a direct causative effect on the delivery of information.  Moreover, this Court's Order required the IRS to conduct additional searches, thereby altering the legal relationship between the Parties.

i.   **The Center's Filing of this Legal Action Was Reasonably Necessary to Obtain the Information Sought.**

In determining whether a legal action is "reasonably necessary" to obtain the information sought, courts consider (1) the length of time between the plaintiff's initial request for information and plaintiff's filing of the suit, and (2) whether there was a reasonable explanation for the government's delay in turning over the requested information prior to litigation.  *Weatherhead,* 112 F. Supp. 2d at 1064.  Reasonable necessity generally exists where the defendant agency would not have searched for files or released them in the absence of litigation.  *Church of Scientology of California v. Harris*, 653 F.2d 584, 588 (D.D.C. 1981).  This is true even where the agency discloses the information voluntarily after litigation has begun.  *See, e.g., Goldstein*, 415 F.Supp. at 305 (purpose of fee provision would be defeated if plaintiffs were forced to forfeit their claim upon surrender of materials before formal action by judge).  Courts also consider "whether the agency, upon actual and reasonable notice

---

[1] In *Buckhannon*, the Supreme Court, in interpreting the meaning of the word "prevailed," rejected a theory based on the causative effect of the litigation because it "allows an award where there is no judicially sanctioned change in the legal relationship of the parties."  532 U.S. at 603.  The Court instead held that a "'prevailing party' is one who has been awarded some relief by the court."  *Id.*  This casts some doubt on the viability of the causative effect or catalyst theory.  However, the Ninth Circuit has yet to apply the *Buckhannon* standard.  Thus, here we apply both standards.

1    of the request, made a good-faith effort to search out the material and to pass on

2    whether it should be disclosed." *Church of Scientology of California v. U.S. Postal*

3    *Serv.*, 700 F.2d at 491 (9th Cir. 1983).

4         Here, the IRS did not make a good faith effort to search for requested

5    documents and comply with the FOIA's mandates.  The Center waited to file its

6    Complaint until September 26, 2006 – a year and a half after its FOIA requests were

7    sent.  It was not until after the Center filed its Complaint that the IRS began to search

8    for responsive documents.  (*See* Order at 2-3; Mikolashek 5/10/07 Deposition at

9    110:22-113:8, Ex. 21 to Declaration of Mark Nagle in Opposition to Defendant's

10   Motion for Summary Judgment; Declaration of John Bailey in Support of Defendant's

11   Motion for Summary Judgment; Declaration of Darla Trilli in Support of Defendant's

12   Motion for Summary Judgment.)  The IRS has provided no explanation for why a

13   search was not conducted in the 18 months prior to the Center's filing of this litigation.

14   Therefore, there is no evidence that the IRS "would have searched for files or released

15   them in absence of litigation." *Church of Scientology of California v. Harris*, 653

16   F.2d at 588.  Further, the IRS failed to make a good faith effort to search for

17   documents even after this litigation commenced.  This Court found that the IRS's

18   search for documents after the litigation commenced was inadequate under FOIA.

19   (Order at 8.)  Thus, it is clear that this litigation was "reasonably necessary" to obtain

20   the information the Center is entitled to under FOIA.

21              ii.    **The Center's Filing of this Legal Action Caused the Delivery of**

22                     **the Requested Information.**

23         The second factor courts consider in determining eligibility is whether a

24   plaintiff's FOIA action caused the delivery of requested information.  *Exner v. FBI*,

25   443 F. Supp. at 1353.  A causal connection is established where documents are

26   released in conjunction with a court order.  *See Church of Scientology Western U.S. v.*

27   *IRS*, 769 F. Supp. 328, 330-331 (C.D. Cal. 1991); *see also Guam Contractors Ass'n v.*

28   *U.S. Dep't of Labor*, 570 F. Supp. 163, 165 (N.D. Cal. 1983) (release of documents by