the government after the filing of a lawsuit creates the inference, absent evidence to the contrary, that the instigation of the litigation had a "causative" effect on the release); *Miller v. U.S. State Dep't*, 779 F.2d 1378, 1389 (8th Cir. 1985) (plaintiff was eligible for attorneys' fees for belated search that was determined to be adequate and in good faith, but was not conducted until after government was "prodded into action" by institution of lawsuit). Moreover, sufficient causal connection is established between the litigation and delivery of information where judicial action forced the defendant agency to take additional measures to respond to a FOIA request. *Church of Scientology Western U.S.*, 769 F. Supp. at 330-331.

Here, the Center's filing of the above-captioned litigation had a direct causative effect on the delivery of information since every responsive document provided by the IRS was located and produced only as a result of this litigation. The IRS failed to conduct a search for documents prior to the filing of this action, but rather was "prodded into action" by the Center's filing of this lawsuit, which resulted in the IRS (1) assigning an attorney, Adrienne Mikolashek, to investigate the status of the IRS's response to the Center's FOIA request (Mikolashek Decl. ¶ 1 (page 1)) and (2) conducting a search for responsive documents (Mikolashek 5/10/07 Deposition at 110:22-113:8, Ex. 21 to Declaration of Mark Nagle in Opposition to Defendant's Motion for Summary Judgment; Mikolashek Decl. ¶ 2 (page 1).) As a result, the IRS finally produced responsive documents, located in its search, 4 months after this litigation commenced—nearly 2 years after the Center had sent its FOIA requests.

Further, a causal connection is established between this action and the delivery of information based on this Court's Order requiring that the IRS take additional measures to respond to the Center's FOIA requests. *See Church of Scientology Western U.S.*, 769 F. Supp. at 330-331. This Court found that the IRS's search for documents was inadequate and ordered the IRS to conduct additional searches. (Order at 8; *see also* Civil Minutes of the August 27, 2007 Hearing on Defendant's Motion for Summary Judgment.) As evidenced above, it is clear that initially the IRS

only searched for and produced responsive documents as a result of this action and that the IRS was subsequently ordered by the Court to conduct additional searches. Thus, the filing of this lawsuit directly caused the IRS to conduct searches that ensured the delivery of information.

### iii. The Center "Substantially Prevailed" Under *Buckhannon* Based on this Court's Order Requiring the IRS to Conduct Additional Searches for Documents.

In *Buckhannon*, the Supreme Court determined that a "prevailing party" is one who has been awarded some relief by a court. 532 U.S. at 603. The Court held that the term "prevailing party" authorizes an award of attorneys' fees only where there is a corresponding alteration of the legal relationship between the parties, reasoning that "a defendant's voluntary change in conduct although perhaps accomplishing what the plaintiff sought to achieve in the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. Thus, under *Buckhannon*, it is necessary that a court order some relief requiring that additional action be taken by the defendant agency to comply with the FOIA request.

Here, this Court found that the IRS's "own evidence suggests that the search was not reasonable" and required that the IRS conduct additional searches to locate responsive documents. (Order at 8.) This Court's Order clearly alters the legal relationship between the parties, requiring involuntary conduct on the part of the IRS in order to comply with the Center's FOIA requests. Thus, since judicial relief was afforded to the Center, it has clearly "substantially prevailed" under the standard set forth in *Buckhannon* and is therefore eligible for fees.

### B. The Center is Entitled to Attorneys' Fees Because its Action Benefits the Public and its Interest in the Requested Information is Not Commercial or Private in Nature.

Once a plaintiff has demonstrated that it is eligible for attorneys' fees, the court must, in its discretion, determine whether the plaintiff is entitled to fees. *Church of*

10

1  *Scientology of California v. U.S. Postal Serv.*, 700 F.2d at 489. In making this
2  determination, courts weigh four factors: "(1) the benefit to the public, if any, deriving
3  from the case; (2) the commercial benefit to the complainant; (3) the nature of the
4  complainant's interest in the records sought; and (4) whether the government's
5  withholding of the records sought had a reasonable basis in law."[2] *Id.*; *Exner v. FBI*,
6  612 F.2d 1202, 1207 (9th Cir. 1980). These four factors are not exhaustive; rather, a
7  court may take into consideration "whatever factors it deems relevant in determining
8  whether an award of attorneys' fees is appropriate." *Church of Scientology of*
9  *California v. U.S. Postal Serv.,* 700 F.2d at 492. Moreover, no single factor should
10 receive dispositive weight. *Id.*
11      Here, the Center, a nonprofit public interest organization, overwhelmingly
12 prevails on all relevant factors, and is therefore clearly entitled to an award of
13 attorneys' fees and litigation costs under FOIA.
14           i.    **The Center's Action Benefits the Public**
15      In weighing the first factor, courts consider whether the plaintiff's action
16 advances a public interest or merely a "private concern." *Id.* at 493; *see also Blue v.*
17 *Bureau of Prisons*, 570 F.2d 529, 533-34 (5th Cir. 1978). A public interest group
18 "seeking information to further a project benefiting the general public" will ordinarily
19 prevail on this factor. *See Church of Scientology of California v. U.S. Postal Serv.*,
20 700 F.2d at 492 (*citing Cuneo*, 553 F.2d at 1365 (*citing* H.R.Rep. No. 1380, 93rd
21 Cong., 2d Sess. 10 (1974), *reprinted in* 1974 U.S. Code Cong. & Ad. News 6267)).
22      The Center is a tax-exempt public interest organization with an overtly
23 charitable and educational purpose. By bringing an action under FOIA, the Center has
24 procured documents from the IRS that shed light on the IRS's treatment of openly gay
25 organizations during the 1970's and 1980's. The Center sought to use the requested
26 documents to educate the public about its history, and in particular its struggle to
27
28 [2] The Center does not challenge the applicability of exemptions or withholdings claimed by the IRS. Therefore, this factor is not relevant here and will not be discussed.

11

1  become the first openly gay and lesbian organization in the United States to obtain
2  501(c)(3) tax-exempt status from the IRS.  This undertaking advances the public
3  interest by informing citizens about their government's conduct, and thereby
4  contributing to the "fund of information used by citizens to make important political
5  choices."  *See O'Neill*, 951 F. Supp. at 1423 (C.D. Cal. 1996).  Moreover, the Center's
6  action advances the public interest by forcing the government to comply with FOIA.
7  *Id.* (*citing Cuneo*, 553 F.3d at 1366) ("the court found a public benefit in the fact that a
8  successful FOIA litigant has served the purposes of FOIA by forcing government
9  compliance").  In no way can the Center's action be construed as advancing a "matter
10 of private concern."  Therefore, this factor weighs heavily in the Center's favor.

11              ii.    **The Center Has Neither Derived a Commercial Benefit, Nor**
12                     **Has it Furthered a Private Interest In Obtaining The**
13                     **Requested Information**

14         The second factor, the plaintiff's commercial benefit derived from the case, and
15  the third factor, the nature of the plaintiff's interest in the records sought, are evaluated
16  together.  *See Church of Scientology of California v. U.S. Postal Serv.*, 700 F.2d 486
17  at 494; *Fenster v. Brown*, 617 F. Supp. 740, 743-744 (D.C. Cir. 1979); *see also Tax*
18  *Analysts v. DOJ*, 965 F.2d 1092, 1095 (D.C. Cir. 1992) ("nature of the [complainant's]
19  interest is closely related [to] and often considered together with the commercial
20  benefit criterion").  Where, as is the case here, the plaintiff is a nonprofit public
21  interest group, courts ordinarily weigh both factors in the plaintiff's favor because an
22  attorneys' fees award "furthers the FOIA policy of expanding access to government
23  information." *Church of Scientology of California v. U.S. Postal Serv.*, 700 F.2d at
24  492 (*quoting* H.R.Rep. No. 1380, 93rd Cong., 2d Sess. 10 (1974)) ("a court would
25  usually allow recovery of fees where the complainant was…a nonprofit interest group
26  versus [sic] but would not if it was a large corporate interest"); *Nationwide Bldg.*
27  *Maint., Inc. v. Sampson,* 182 U.S. App. D.C. 83 (D.C. Cir. 1977); *see also United*
28  *Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus., Local 598,*

841 F.2d 1459, 1461 (9th Cir. 1988) (the absence of a commercial or private benefit should be weighted in favor of a fee award); *see also Freedom of Information Act and Amendments of 1974* (P.L. 93-502), Source Book: House Comm. on Gov't Operations, Senate Comm. on the Judiciary, 94th Cong., 1st Sess. at 227 (1975) (favored interests are not commercial, but rather are "scholarly, journalistic and public-interest oriented").

Here, the Center's request was not motivated by a commercial or private interest. Nor has the Center derived a commercial or private benefit following the IRS's disclosure of requested records. The Center, as a nonprofit public interest group, was interested in the requested information to better understand one of the most significant events in its early history. Further, the Center's interest stemmed from its desire to educate the public about the Center's struggle to become the first openly gay and lesbian organization to obtain tax-exempt status and the IRS's treatment of openly gay and lesbian organizations during the 1970's and 1980's. *See, e.g., Cazalas v. DOJ*, 709 F.2d 1051, 1053 (5th Cir. 1983) (finding requester's "strong personal interest" was not necessarily inconsistent with equally strong public interest in receiving documents since "it is in the 'public interest' to discover, if true, that the Department of Justice is less than entirely just in its dealings"). Therefore, because the Center's interest in the requested documents was not commercial, but rather public-interest oriented, the Center should prevail on both these factors.

### C. The Center is Entitled to Its Lodestar Fees

To obtain attorneys' fees and litigation costs, the plaintiff should submit a lodestar amount: the product of the hours of work performed and the corresponding billable rate, which the court has the discretion to adjust. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (lodestar is defined generally as the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate). The lodestar is presumed reasonable if the hours and rates are both reasonable. *Long*, 932 F.2d at 1313-1314. The hourly rate to be applied is the "rate prevailing in the

community for similar work performed by attorneys of comparable skill, experience, and reputation." *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997) (*quoting Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-1211 (9th Cir. 1986)). The lodestar may be modified in the court's discretion based upon factors including: the time and labor required, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the preclusion of other employment by the attorney due to acceptance of the case, the customary fee, whether the fee is fixed or contingent, time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the "undesirability" of the case, the nature and length of the professional relationship with the client, and awards in similar cases. *Exner*, 443 F. Supp. at 1354; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). Modifications are the exception rather than the rule since the lodestar amount is presumed to constitute a reasonable fee. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). A higher-than-normal award of attorneys' fees may be justified where government "recalcitrance and resistance" to complying with the FOIA request required additional work by the plaintiff. *See, e.g., O'Neill*, 951 F. Supp. at 1413.

i. **The Hours Expended In This Litigation Are Reasonable**

The Center has provided declarations and detailed billing records documenting the time expended, including the date, a description of the task performed and the amount of time expended. (*See* Dewey & LeBoeuf Time Entries, attached as Ex. 1 to Hansell Decl.; *see also* Nagle Decl.; Declaration of Dorothy Black in Support of Plaintiff's Motion for Attorneys' Fees and Litigation Costs ("Black Decl."); Declaration of Heather Capell in Support of Plaintiff's Motion for Attorneys' Fees and Litigation Costs ("Capell Decl."); Declaration of Boaz Green in Support of Plaintiff's Motion for Attorneys' Fees and Litigation Costs ("Green Decl.").) The declarations constitute "[s]worn testimony that, in fact, it took the time claimed" and "[are] evidence of considerable weight on the issue of the time required in the usual case."

14

1 *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988). To deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id.*

The amount requested by the Center based on these detailed billing records is reasonable based on the IRS's continued refusal to comply with FOIA mandates. As discussed above, the Center's *pro bono* counsel incurred significant attorneys' fees and litigation costs as a result of almost 15 months of hard fought litigation. During this period, counsel for the Center was forced to engage in a significant amount of additional work due to the IRS's continued "recalcitrance and resistance" in complying with the Center's FOIA request. Such additional work included:

(1)   Participating in expensive, time consuming additional discovery (including multiple depositions) due to the IRS's refusal to provide sufficient declarations detailing the searches conducted as requested by the Center;

(2)   Opposing the IRS's costly, and ultimately unsuccessful motion for summary judgment after the Center proposed foregoing such motion practice if the IRS would provide certain declarations, which the IRS refused to provide;

(3)   Anticipating and preparing for a possible trial on the merits;

(4)   Preparing for and attending two fruitless telephonic settlement conferences;

(5)   Engaging in an unnecessary two-month battle over the language of the court ordered stipulation; and

(6)   Drafting and submitting a Settlement Demand letter that was summarily rejected by the IRS, which forced the Center to draft and submit this motion.

Further, the amount requested by counsel for the Center is reasonable because counsel has reviewed its billing records and eliminated entries where work was

1  arguably duplicative (such as two attorneys appearing in court or at a deposition),
2  where issues and theories were explored but later abandoned and where any work was
3  considered excessive or unnecessary. (Hansell Decl. ¶ 7.) Additionally, counsel did
4  not bill for the time it took associate Mark Nagle to review and get up to speed on the
5  case when he replaced Dorothy Black. (*Id.*) Counsel has provided declarations from
6  all attorneys that have been involved in this litigation detailing their professional
7  background and describing the nature of the tasks they performed. (*See* Hansell Decl.;
8  Nagle Decl.; Black Decl.; Capell Decl.; Green Decl.)

         ii.    **Counsel's Hourly Rates Are Reasonable**

10     "Under the FOIA, this court should award plaintiffs an hourly rate equivalent to
11 the market rate for an attorney of similar skill." *Birkland v. Rotary Plaza, Inc.*, 643 F.
12 Supp. 223, 227 (N.D. Cal. 1986) *citing Blum v. Stenson*, 465 U.S. 886, 895 (1984)
13 (awarding market rate to non-profit counsel). "The Court should use the prevailing
14 market rate in the community for similar services of lawyers of 'reasonably
15 comparable skill, experience, and reputation.'" *Chalmers,* 796 F.2d at 1210; *see also*
16 *id.* at 227. The Center has submitted the declaration of Barrett S. Litt, an expert on
17 attorneys' fees in public interest cases, and John J. Quinn, Esq. supporting the
18 reasonableness of counsel's rates, and the consistency of those rates with those
19 charged by attorneys of comparable skill and experience. (Declaration of Barrett S.
20 Litt in Support of Plaintiff's Motion for Attorneys' Fees ("Litt Decl."); Declaration of
21 John J. Quinn in Support of Plaintiff's Motion for Attorneys' Fees and Litigation Costs
22 ("Quinn Decl.")). "Declarations of the prevailing market rate in the relevant
23 community are sufficient to establish the appropriate billing rate for lodestar
24 purposes." *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545-1546
25 (9th Cir. 1992).
26     In determining the prevailing market rate, the attorney's actual billing rate is
27 highly relevant. *White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir. 1983).
28 Counsel's own billing rates carry a presumption of reasonableness. *See, e.g., Gusman*

*v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). In this fee motion, the Center requests that the Court use the following attorney hourly rates:

| TIMEKEEPER | Dewey & LeBoeuf 2006 Rate | Dewey & LeBoeuf Jan.-July 2007 Rate | Dewey & LeBoeuf Aug. – Dec. 2007 Rate |
|---|---|---|---|
| Dean Hansell (Partner – L.A. Office) | $675.00 | $695.00 | $730.00 |
| Heather Capell (Senior Associate – D.C. Office) | N/A | $525.00 | $525.00 |
| Dorothy Black (Associate – L.A. Office) | $460.00 | $485.00 | $505.00 |
| Boaz Green (Associate – D.C. Office) | N/A | $365.00 | $395.00 |
| Mark Nagle (Associate – L.A. Office) (took over Dorothy Black's responsibilities) | $300.00 | $325.00 | $365.00 |
| Linda Chow-Fortune (Paralegal – L.A. Office) | $170 | $185 | $185 |

17

The rates sought by counsel in this case are comparable to the rates charged by other firms for work by attorneys of comparable skill and experience. (*See* Litt Decl. ¶¶ 17-24; *see also* Quinn Decl. ¶ 10.)

In addition, the Center seeks compensation for the work of paralegals. The Supreme Court has held that reasonable attorneys' fees include the work of attorneys and support staff such as paralegals "whose labor contributes" to the work product. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). The work performed by non-attorney professionals is to be compensated at the market rate for their services rather than at their cost to the attorney. *See id.* The submitted declarations demonstrate that the rates charged for these categories are reasonable, and that it is local practice to bill for such services. (*See* Litt Decl. ¶¶ 23, 24; Quinn Decl. ¶¶ 6, 10.)

This Court should award plaintiffs' counsel its requested hourly rates, as they are reflective of the Los Angeles market rate for lawyers of comparable experience and skill.

### D. The Center is Entitled to Its Reasonable Costs

It is the routine and common practice of firms to charge fee-paying clients separately for copying, facsimile, long distance telephone charges, word processing, postal charges, litigation supply costs, computerized legal and database research and other necessary out-of-pocket expenses. (*See* Hansell Decl. ¶ 14; *see also* Quinn Decl. ¶ 7.) Here, counsel for the Center only seeks litigation costs for processing and filing fees and the costs of deposition transcripts. The total litigation costs requested by Dewey & LeBoeuf on behalf of its client are $2,256.10. (*See* Hansell Decl. ¶¶ 13-15; *see also* Ex. 2 to Hansell Decl.)

### IV. SUMMARY OF THE FEES AND COSTS CLAIMED.

The Center seeks an award of $298,289.10. The basis for this request is contained in the Declarations and Exhibits submitted with this motion. Among the exhibits are detailed time and billing records providing the basis for the amounts

sought. (*See* Dewey & LeBoeuf Time Entries, attached as Ex. 1 to Hansell Decl.). Here, we summarize the totals:

| ATTORNEYS – 2006 RATES | | | |
| --- | --- | --- | --- |
| TIMEKEEPER | HOURS | RATE | AMOUNT |
| Dean Hansell | 22.5 | $675.00 | $15,187.50 |
| Heather Capell | --- | $525.00 | 0.00 |
| Dorothy Black | 34.85 | $460.00 | $16,031.00 |
| Boaz Green | --- | $325.00 | 0.00 |
| Mark Nagle | --- | $300.00 | 0.00 |
| | | TOTAL | $31,218.50 |

| ATTORNEYS – JAN – JULY 2007 RATES | | | |
| --- | --- | --- | --- |
| TIMEKEEPER | HOURS | RATE | AMOUNT |
| Dean Hansell | 57.60 | $695.00 | $40,032.00 |
| Heather Capell | 97.80 | $525.00 | $51,345.00 |
| Dorothy Black | 58.50 | $485.00 | $28,372.50 |
| Boaz Green | 30.25 | $365.00 | $11,041.25 |
| Mark Nagle | 9.70 | $325.00 | $3,152.50 |
| | | TOTAL | $133,943.25 |

| ATTORNEYS – AUG – DEC 2007 RATES | | | |
| --- | --- | --- | --- |
| TIMEKEEPER | HOURS | RATE | AMOUNT |
| Dean Hansell | 35.20 | $730.00 | $25,696.00 |
| Heather Capell | 26.30 | $525.00 | $13,807.50 |
| Dorothy Black | --- | $505.00 | 0.00 |
| Boaz Green | 85.75 | $395.00 | $33,871.25 |
| Mark Nagle | 150.00 | $365.00 | $54,750.00 |

|  |  | TOTAL | $128,124.75 |
|---|---|---|---|

| PARALEGAL – 2006 RATE ||||
|---|---|---|---|
| TIMEKEEPER | HOURS | RATE | AMOUNT |
| Linda Chow-Fortune | 5.6 | $170.00 | $952.00 |

| PARALEGAL – JAN – JULY 2007 RATE ||||
|---|---|---|---|
| TIMEKEEPER | HOURS | RATE | AMOUNT |
| Linda Chow-Fortune | .7 | $185.00 | $129.50 |

| PARALEGAL – AUG –DEC 2007 RATE ||||
|---|---|---|---|
| TIMEKEEPER | HOURS | RATE | AMOUNT |
| Linda Chow-Fortune | 9.0 | $185.00 | $1,665.00 |

| COSTS ||
|---|---|
| CATEGORY | AMOUNT |
| Filing Fees | $350.00 |
| Process service of complaint | $29.00 |
| Deposition Transcripts | $1,877.10 |
| TOTAL | $2,256.10 |

| COMPREHENSIVE TOTALS ||
|---|---|
| CATEGORY | AMOUNT |
| Attorneys | $293,286.50 |
| Paralegal | $2,746.50 |
| Litigation Costs | $2,256.10 |
| TOTAL | $298,289.10 |

20

## V. CONCLUSION

For the foregoing reasons, the Center respectfully requests that this Court grant its motion for fees and costs, and for such other relief that this Court deems proper.

Dated: January 23, 2008

Dean Hansell
Mark J. Nagle
Heather L. Capell (not admitted in California)
Boaz I. Green (not admitted in California)
DEWEY & LEBOEUF LLP

By: /s/ Dean Hansell /mgn

Attorneys for Plaintiff
**THE LOS ANGELES GAY AND LESBIAN COMMUNITY SERVICES CENTER**

# PROOF OF SERVICE

I declare that I am employed in the County of Los Angeles, California. I am over the age of eighteen years and not a party to the within case; my business address is: Dewey & LeBoeuf LLP, 333 South Grand Avenue, Suite 2600, Los Angeles, CA 90071-1530.

On January 24, 2008, I served the following document(s) described as:

PLAINTIFF TH LOS ANGELES GAY AND LESBIAN COMMUNITY SERVICES CENTER'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND LITIGATION COSTS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

on the following interested parties in this action:

Gerald Role, Esq.
U.S. Department of Justice
555 4th Street, Room 6809
Washington, D.C. 20001

[ ]   (BY FEDERAL EXPRESS DELIVERY)

[ ]   (BY MAIL) I caused to be served on parties in this action the said documents by placing a true copy thereof in a sealed envelope with postage fully prepaid and then by sealing said envelope and depositing the envelope in the United States mail.

[X]   (BY ELECTRONIC MAIL) I caused such documents to be served on the parties via CM/ECF e-mail.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 24, 2008 at Los Angeles, California.

_____
Linda Chow-Fortune