DEAN HANSELL, State Bar No. 93831
MARK J. NAGLE, State Bar No. 248873
DEWEY & LEBOEUF LLP
333 South Grand Avenue
Suite 2600
Los Angeles, CA 90071
Telephone: (213) 621-6000
Facsimile: (213) 621-6100

HEATHER L. CAPELL, Not Admitted in California
BOAZ I. GREEN, Not Admitted in California
DEWEY & LEBOEUF LLP
1101 New York Avenue, NW
Suite 1100
Washington, DC 20005
Telephone: (202) 986-8000
Facsimile: (202) 986-8102

Attorneys for Plaintiff
THE LOS ANGELES GAY AND LESBIAN COMMUNITY SERVICES CENTER

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

The Los Angeles Gay and Lesbian Community Services Center,

Plaintiff,

vs.

Internal Revenue Service,

Defendant.

Case No. CV06-6122-DSF (FMOx)

REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS FEES AND LITIGATION COSTS

## TABLE OF CONTENTS

**PAGE NO.**

I. The Center is Entitled to Attorneys' Fees ........ 1

A. The Production of the Documents has Public Benefit ........ 1

1. The Documents Contained Important and New Information ........ 1

2. Exposing Evidence of Discrimination by Government Agencies is Valuable ........ 3

3. Past Governmental Anti-Gay and Lesbian Bias is Relevant to Current Social and Political Issues ........ 4

4. The Center is a Public Interest Organization and the Documents were Sought in Order to Educate the Public ........ 5

B. The Center is Entitled to Fees even if the Production of Documents did not have a Public Benefit ........ 5

II. The Center's Fee Request is Reasonable Given the IRS's "Recalcitrance and Resistance" in Complying with Its FOIA Obligations. ........ 7

III. CONCLUSION ........ 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978) ........................................4

*Cazalas v. U.S. Department of Justice*, 709 F.2d 1051 (5th Cir. 1983) ....................3

*Church of Scientology of California v. U.S. Postal Serv.*, 700 F.2d 486 (9th Cir. 1983) ........................................................................................5, 6

*Cook v. Rumsfeld*, 429 F. Supp. 2d 385 (D. Mass. 2006) ........................................4

*Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) ........................................4

*Cuneo v. Rumsfeld*, 553 F.2d at 1360, 1365 (D.C. Cir. 1977) (*citing* H.R.Rep. No. 1380, 93rd Cong., 2d Sess. 10 (1974), *reprinted in* 1974 U.S. Code Cong. & Ad. News 6267) ........................................................................5

*D'Emmanuele v. Montgomery Ward & Co.*, 904 F.2d 1379 (9th Cir. 1990)............7

*Exner v. FBI*, 612 F.2d 1202 (9th Cir. 1980) ..........................................................6

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...............................................................7

*LaSalle Extension Univ. v. Federal Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980) ..............................................................................................................6

*Long v. IRS*, No. C74-724P, 2006 U.S. Dist. LEXIS 26975 (W.D. Wash. April 3, 2006) ...................................................................................................................5

*Northwest Coalition for Alternatives to Pesticides v. EPA*, 421 F. Supp. 2d 123 (D.D.C. 2006) ......................................................................................................6

*O'Neill, Lysaght, & Sun v. D.E.A.*, 951 F. Supp. 1413 (C.D. Cal. 1996) .............7, 8

*Piper v. U.S. Department of Justice*, 339 F. Supp. 2d 13 (D.D.C. 2004)..................3

*Taylor v. Rice*, 451 F.3d 898 (D.D.C. 2006)..............................................................4

## STATE CASES

*In re Marriage Cases*, 143 Cal. App. 4th 873 (2006)................................................4

## DOCKETED CASES

*Hudson Valley LGBTQ Community Center v. Assessor of the City of Kingston*, Index No. 004214/2007 (Ulster Cty. Ct. N.Y.) ................................................4

## FEDERAL STATUTES

5 U.S.C. § 552(a)(4)(E)..........................................................................................1, 12

Defendant the Internal Revenue Service's ("IRS") relies on creative and misguided arguments in an attempt to refute the Los Angeles Gay and Lesbian Community Services Center's ("the Center") entitlement to attorneys' fees and litigation costs under 5 U.S.C. § 552(a)(4)(E). Additionally, the IRS disputes the reasonableness of the fees sought without noting a single instance where the work performed was excessive or unreasonable. Further, it is the IRS's own obdurate conduct in failing to meet its clear FOIA obligations that caused this prolonged and costly litigation.

## I. **THE CENTER IS ENTITLED TO ATTORNEYS' FEES**

The IRS does not challenge the Center's eligibility for attorneys' fees and litigation costs; however, the IRS half-heartedly challenges the Center's entitlement to attorneys' fees by arguing that the documents produced as a result of this litigation are not of sufficient interest to the public for the Center to prevail on the "public benefit" factor. The IRS's creative argument, as best we can understand it, is that its homophobic treatment of the Center's application for tax-exempt status was in line with "then-current attitudes," is not the only example of the IRS's homophobic actions in the 1970s, and is already evidenced in IRS General Counsel memoranda available through Westlaw. (Opposition to Plaintiff's Motion for Attorneys Fees and Litigation Costs ("Opposition") at 4.) The IRS further contends that the documents produced as a result of this litigation are merely records of an administrative decision made in the late 1980s and are "a matter of private concern." (Opposition at 3, 6.) However, a review of these documents shows that they are of significant public interest and provide new and previously unavailable information.

### A. The Production of the Documents has Public Benefit

#### 1. The Documents Contained Important and New Information

The IRS underestimates the significance of the documents it eventually produced. The 29 pages produced in January 2007 include a copy of the August 2,

1974 Ruling Letter in which the IRS granted the Center tax-exempt status with a number of homophobic restrictions. (IRS January 2007 Production of Documents ("IRS Production") at 16-21, attached as Ex. 1 to Supplemental Declaration of Mark Nagle in Support of Plaintiff's Reply to Opposition to Plaintiff's Motion for Attorneys' Fees and Litigation Costs ("Nagle Decl.").) The documents also include internal memoranda in which IRS officials discussed the Center's request to remove the conditions and the IRS's possible response to this request. The memoranda contain information not previously known, including that:

- the IRS admitted internally that the conditions imposed on the Center were "silly and probably without legal foundation." (IRS Production at 12.);
- the IRS nevertheless considered sanctioning the Center for violations of these conditions (*Id.* at 10, 12.); and
- the IRS hoped that such sanctions would cause the Center to withdraw its request. (*Id.* at 12.)

These documents are not simply records of an "administrative decision." Rather, these documents shed light on the admitted illegitimacy of the IRS's homophobic rulings during the 1970s and their lasting effects on the Center.

The IRS argues that the information sought by the Center, even if found and produced, "would not have resulted in information not already available to the public." (Opposition at 5.) As support for this argument the IRS cites to two IRS General Counsel memoranda from the 1970s in which the IRS rejects an application for tax-exempt status for one gay rights organization and grants conditional tax-exempt status to another. Both memoranda show that the Center was not the only gay rights organization to be harmed by the IRS's homophobic policies in the 1970s. However, these published memoranda, unlike the documents produced as a result of this litigation, do not reveal the long-lasting burden faced by the Center as a result of the IRS's decisions. Further, the public memoranda do not contain any information

regarding the IRS's later apparent change of heart regarding gay and lesbian organizations. The documents obtained by the Center therefore shed more light onto what was clearly, as shown by the IRS, consistent homophobic treatment of gay and lesbian organizations. The fact that there is already *some* publicly available information regarding such treatment *increases* the value of obtaining documents that expand the public's knowledge on the matter.

2. Exposing Evidence of Discrimination by Government Agencies is Valuable

The produced documents provide valuable insight into the prevalence and impact of a major federal agency's homophobic sentiments during the 1970s. This information adds to the "fund of information" the public can use to evaluate the IRS and its past discriminatory conduct. This is precisely the kind of information courts have held to be of public interest, warranting a grant of attorney fees in FOIA litigation. *See Cazalas v. U.S. Dep't of Justice*, 709 F.2d 1051, 1053-54 (5th Cir. 1983) (granting attorneys' fees in FOIA litigation to Plaintiff who sought documents pertaining to alleged discrimination against her). The *Cazalas* court held that even though the disclosure of the documents provided a private benefit to a plaintiff suing the Department of Justice over alleged discrimination, it also brought a public benefit because the public had an interest in whether "decisions of the Department of Justice on internal matters are shown to be premised on less than total justice but instead are based on an impermissible factor such as gender…" *Id*; *see also Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d. 13, 15 (D.D.C. 2004) (granting attorneys' fees in FOIA litigation where the documents sought could shed light on possible misconduct by the FBI). The court in *Piper* held that "disclosure of this information will assist the citizenry in making informed judgments and opinions about the FBI and how it is operating. While the impact on the public of releasing this information is not quantifiable, the Court nevertheless finds that it adds to the public's fund of knowledge." *Id*.

3. Past Governmental Anti-Gay and Lesbian Bias is Relevant to Current Social and Political Issues

Examples of past discrimination against gays and lesbians by governmental agencies are of great public interest and specifically the kind of information "that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (*quoting Blue v. Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978). There continues to be prominent debate over gay and lesbian rights, and this debate is informed by the long history of discrimination against gay and lesbian individuals and their organizations. Additionally, if indeed the IRS is correct in stating that "times have changed," this very change in attitude can help inform the public debate on complaints of current anti-gay discrimination. The information contained in the produced documents is relevant to a variety of current issues. For example:

- Gay and lesbian community services organizations continue to struggle to receive tax-exempt status. *See, e.g.*, *Hudson Valley LGBTQ Community Center v. Assessor of the City of Kingston*, Index No. 004214/2007 (Ulster Cty. Ct. N.Y.) (challenging the City of Kingston's denial of a not-for-profit gay and lesbian community services center's exemption from property tax. Description of suit available at http://www.lambdalegal.org/our-work/in-court/cases/hudson-valley-lgbtq-community.html (last visited Feb. 27, 2008)).
- Gay and lesbian organizations continue to fight against discriminatory actions taken by government agencies. *See, e.g.*, *Taylor v. Rice*, 451 F.3d 898 (D.D.C. 2006); *Cook v. Rumsfeld*, 429 F. Supp. 2d 385 (D. Mass. 2006);
- The history of discrimination against gays and lesbians continues to be relevant in gay and lesbian rights litigation. *See, e.g.*, *In re Marriage Cases*, 143 Cal. App. 4th 873, 974-76 (2006) (*J. Kline dissenting*) (citing the long history of discrimination against gays and lesbians as basis for holding that gays and

lesbians constitute a suspect class and that classifications based on sexual orientation should be subject to strict scrutiny).[1]

4. The Center is a Public Interest Organization and the Documents were Sought in Order to Educate the Public

A public interest group "seeking information to further a project benefiting the general public" will ordinarily be awarded attorneys' fees. *See Church of Scientology of California v. U.S. Postal Serv.*, 700 F.2d at 492 (*citing Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977) (*citing* H.R.Rep. No. 1380, 93rd Cong., 2d Sess. 10 (1974), *reprinted in* 1974 U.S. Code Cong. & Ad. News 6267)). The Center filed the FOIA request to obtain documents to use as part of a campaign designed to educate the public about the Center's struggle to become the first openly gay and lesbian organization to obtain tax-exempt status and the IRS's treatment of openly gay and lesbian organizations during the 1970sand 1980's. (Supplemental Declaration of Dean Hansell in Support of Plaintiff's Reply to Opposition to Plaintiff's Motion for Attorneys' Fees and Litigation Costs ("Hansell Decl.") ¶ 5.)[2] The fact that the documents were intended for dissemination and public education also weighs in favor of awarding attorneys' fees. *See Long v. IRS*, No. C74-724P, 2006 U.S. Dist. LEXIS 26975, *15 (W.D. Wash. April 3, 2006) ("because Ms. Long seeks to disseminate this information sought in this proceeding to the public, there would be a public benefit from disclosure of the records sought by Ms. Long").

B. <u>The Center is Entitled to Fees even if the Production of Documents did not have a Public Benefit</u>

Along with the public benefit factor, courts evaluating an attorneys' fees claim weigh two additional and equally important factors: whether the plaintiff derived a

---

[1] The IRS argues that because its homophobic conduct was consistent with prevailing social attitudes at that time, and because "times have changed," records pertaining to such conduct are not of public interest. (Opposition at 2-3.) However, past acts of governmental discrimination, even if consistent with the mores of the time, can still be matters of public concern.

[2] The Center's FOIA litigation generated considerable public interest, including press coverage and interest in the documents the Center hoped to uncover. (Hansell Decl. at ¶¶ 6-7.) The public interest generated by the litigation is further proof that the documents relate to matters of public concern.

commercial benefit from the FOIA action and whether the plaintiff had a commercial interest in the records sought. *Exner v. FBI*, 612 F.2d 1202, 1207 (9th Cir. 1980); *Church of Scientology of California v. U.S. Postal Serv.*, 700 F.2d 486, 489 (9th Cir. 1983). In its Opposition, the IRS fails to even allege that the Center, a nonprofit public interest group, brought the FOIA action to further a commercial interest, or benefited commercially as a result of the action. The IRS instead relies upon the assertion that the records produced do not benefit the public. As detailed above and in the Center's Motion, the Center sought the records to help educate the public about its struggle to become the first openly gay and lesbian organization to obtain tax-exempt status, and further to shed light upon the government's discriminatory treatment of gays and lesbians. This interest is not commercial. Further, the Center has not benefited commercially from the FOIA action. Even assuming, *arguendo*, that the IRS prevails on the public benefit factor, the Center overwhelmingly prevails on the remaining factors and thus is still entitled to attorneys' fees.

Further, the Center would be entitled to fees even if no documents had been produced because the IRS's refusal to conduct an adequate FOIA search forced the Center to file suit. In *Northwest Coalition for Alternatives to Pesticides v. EPA*, 421 F. Supp. 2d 123 (D.D.C. 2006), the plaintiff was granted attorneys' fees even though the EPA produced no documents as a result of the FOIA litigation. The court held that while the plaintiff could not satisfy the first factor of the entitlement considerations, the balance of the considerations favored an attorneys' fees award because the EPA's initial refusal to explain its reasons for withholding the requested documents forced the plaintiff to file suit. The court held that a grant of attorneys' fees was warranted because it served as "compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *Id.* at 129 (*quoting LaSalle Extension Univ. v. Federal Trade Comm'n*, 627 F.2d 481, 484 (D.C. Cir. 1980)). Here, the Center was forced to file suit after the IRS failed to respond to the Center's FOIA request for over a year and a half, and further had to endure

protracted and hard-fought litigation necessary to compel the IRS to meet its existing FOIA obligations. Even if the suit had not led to production of documents, and even if the documents produced were, as the IRS argues, of insufficient public interest, under *Northwest Coalition*, the Center is still entitled to attorneys' fees.

## II. <u>**THE CENTER'S FEE REQUEST IS REASONABLE GIVEN THE IRS'S "RECALCITRANCE AND RESISTANCE" IN COMPLYING WITH ITS FOIA OBLIGATIONS.**</u>

There is a "strong presumption" that an attorneys' fee is reasonable if the hours plaintiff's counsel expended on litigation and the corresponding billable rate are both reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also D'Emmanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990). In its Motion, the Center produced declarations and detailed billing records documenting the time expended, and describing the specific tasks performed by its counsel. But rather than specifically challenge any of these declarations or records in its Opposition, the IRS instead relies upon a single misguided argument: the Center's fees are excessive because this case is not complex. This misses the point. The Center has always maintained that the IRS's obligation to comply with FOIA is not a complex issue – quite the contrary. It is the IRS's continued disregard of its clear obligations under FOIA that has resulted in this unnecessarily hard-fought and prolonged litigation. When, as here, government "recalcitrance and resistance" to complying with a FOIA request requires plaintiff's counsel to conduct additional work, courts will augment – not reduce – an attorneys' fees award. *See, e.g., O'Neill, Lysaght, & Sun v. D.E.A.*, 951 F. Supp. 1413 (C.D. Cal. 1996).

As detailed in the Center's Motion, the IRS's "recalcitrance and resistance" forced the Center's counsel to conduct a substantial amount of additional work, including:

- Opposing the IRS's unsuccessful motion for summary judgment even after the Center urged the IRS to forego such motion practice;

- Participating in unnecessary discovery including two depositions in Washington, D.C. after the IRS refused to provide sufficient declarations;
- Anticipating and preparing for a possible trial on the merits;
- Engaging in an unnecessary two-month battle over the language of the court ordered stipulation; and

The IRS's conduct has significantly increased the costs of this litigation. Rather than adhere to its clear obligations under FOIA – apparent to both the Center and this Court – the IRS chose to embark on a path of obdurate behavior that turned a simple case into a protracted and costly one. Consequently, the IRS's underlying argument – that the fees sought are excessive because the issue litigated is simple – is fundamentally flawed and does not rebut the "strong presumption" that the Center's attorneys' fees are reasonable.

In an attempt to take attention off its own conduct, the IRS focuses the Court's attention on the number of documents produced. However, it is not the number of documents that is significant, but rather the time spent on the litigation. In *O'Neill, Lysaught & Sun*, 951 F. Supp. at 1426, the litigation resulted in the production of 21 pages of material. The court rejected the Drug Enforcement Agency's ("DEA") argument that the fee amount sought was unreasonable given the number of pages produced. *Id.* Instead, the court focused on the time spent on the litigation and on the DEA's obdurate behavior in finding the fee amount reasonable. *Id.* Here, the time spent by the Center's counsel on this matter results from over a year and half of hard fought litigation, much of which was made necessary by the IRS's conduct. As the court found in *O'Neill*, the IRS "cannot prolong the litigation through its own obdurate behavior and then protest that [the Center] has spent too much time prosecuting the action." *Id.*

The IRS refused to make even a cursory effort to comply with the Center's FOIA requests or the mandates of FOIA before the Center filed suit. Even after the Center

filed suit, this Court found that the IRS still failed to conduct an adequate search for documents under the FOIA. If the 29 pages of documents produced in January 2007 and the 4 documents produced in May 2007 by the IRS had been the result of an adequate search for documents under the FOIA, the litigation would not have proceeded beyond summary judgment. However, since the Center produced to the IRS 167 pages of documents written by or to it that "were highly likely to be located in the Determination File" that the IRS could not locate and that the IRS's "own evidence suggested that the search conducted was not reasonable" this Court found that the IRS's search for documents was inadequate under FOIA and ordered it to conduct an additional search for documents. (Civil Minutes of the August 27, 2007 Hearing on Defendant's Motion for Summary Judgment at 4-5.) Although the IRS's additional search did not yield responsive documents, the Center's counsel was required to spend a significant amount of additional time on the tasks detailed above in order to compel the IRS to conduct an adequate search for documents under FOIA.

The IRS also claims that "plaintiff had to respond to a motion for summary judgment, because that is how FOIA cases are litigated and because the Court had set a deadline for dispositive motions." (Opposition at 6.) At the Local Rule 7-3 conference of counsel on June 20, 2007, the Center detailed for the IRS why it needed additional information regarding the searches conducted and requested that the IRS provide supplemental declarations to assist the Center in determining the adequacy of the searches conducted. In a letter sent to the IRS on June 22, 2007, the Center's counsel again urged the IRS to forego costly motion practice and instead provide the requested declarations to help establish the adequacy of the search conducted (June 22, 2007 Letter from Dean Hansell to Gerald Role, attached as Ex. 2 to Declaration of Mark Nagle in Support of Plaintiff's Motion for Attorneys' Fees and Litigation Costs.)

Further the IRS also mischaracterizes the parties' settlement discussions, stating that the Center "all but demanded a settlement conference for attorney fees, but refused to provide a figure or accounting of fees during that procedure." (Opposition at 6.) At

the September 11, 2007 telephonic settlement conference, before Magistrate Judge Fernando Olguin, both parties agreed that the issue of attorneys' fees might be resolved. The IRS, however, stated that it would not be willing to negotiate a settlement on a demand for attorneys' fees above a certain amount. In the Center's settlement demand letter, it set forth the amount of fees sought and in subsequent communications asked the IRS, given the amount of fees sought, whether the IRS would be willing to negotiate the issue of fees. The Center was willing to provide detailed billing records if it received adequate assurance from the IRS that there would be a purpose served in doing so. The IRS provided no such assurance. Rather, the IRS summarily rejected the Center's settlement demand.

Additionally, the IRS finds it unreasonable that counsel for the Center used five attorneys to litigate a "non-complex case." (Opposition at 7.) The IRS makes this claim without noting a single instance where work overlapped, where attorneys performed essentially administrative tasks or where any of the work performed was unnecessary or unreasonable. The IRS contends that simply because five lawyers worked on this case at various times the fees sought are unreasonable. However, as clearly set forth in the declarations provided by every attorney who worked on the case, each was given specific task to perform. Associate Mark Nagle replaced Dorothy Black as the primary associate in the Los Angeles office. Counsel wrote off the time it took him to get up to speed on the case when he replaced Dorothy Black. Counsel's Washington D.C. associates Heather Capell (has since become partner) and Boaz Green were both brought in because, as highlighted in the Center's Motion, in the absence of sufficient declarations detailing the searches the IRS conducted, the Center was forced to proceed with two separate 30(b)(6) depositions of IRS designees in Washington, D.C.[3] Rather than expend additional resources flying Dean Hansell or Dorothy Black to Washington, D.C., counsel instead involved both Ms. Capell and Mr.

---

[3] In its Opposition, the IRS inaccurately states that the Center conducted one deposition. The Center conducted two depositions over two days to accommodate the deponents' schedules.

Green. Only Ms. Capell billed for the time actually spent deposing both John Bailey and Adrienne Mikolashek.

Further, as highlighted in both the Center's Motion and in Paragraph 7 of the Declaration of Dean Hansell, the Center's counsel reviewed its billing records and eliminated entries where work was deemed excessive or arguably duplicative, or where theories were explored but later abandoned. Counsel also eliminated work performed by attorneys who acted as consultants in this case. This included eliminating the hours billed by George Abramowitz, a Dewey & LeBoeuf senior tax partner who consulted in this case because of his experience with the IRS and its procedures. Thus, despite the IRS's claim to the contrary, counsel did involve attorneys knowledgeable about IRS – it just did not bill for them. Counsel's review of its billing records reduced the fee sought by $144,651.75.

Finally, the IRS wrongly claims that no attorneys were used "who had any experience with the Freedom of Information Act or litigation under the Act." As noted in paragraph 1 of Dean Hansell's Declaration, he has handled other FOIA matters. Heather Capell was involved in FOIA matters and worked with Federal records management to ensure proper retention of litigation files during her career as U.S. Commodity Futures Trading Commission attorney. (Supplemental Declaration of Heather Capell in Support of Plaintiff's Motion for Attorneys' Fees and Litigation Costs ("Capell Decl.") ¶ 3.) Ms. Capell has specialized in document management and litigation throughout her career as a private litigator. (Capell Decl. ¶ 4.) Moreover, she has consulted and provided advice to institutional private clients on matters of document retention and data management. (*Id.*) She has also headed teams responsible for search, collection, and document production projects in connection with major internal investigations in response to government inquiries. (*Id.*)

## III. CONCLUSION

For the reasons detailed above and in the Center's Motion, it is eligible and entitled to attorneys' fees under 5 U.S.C. § 552(a)(4)(E). The fees sought by the Center are reasonable based on the IRS's conduct, which increased the costs of this litigation. The Center therefore respectfully requests that this Court grant its motion for fees and costs, and for such other relief as this Court deems proper.

Dated: March 3, 2008

Dean Hansell
Mark J. Nagle
Heather L. Capell (not admitted in California)
Boaz I. Green (not admitted in California)
DEWEY & LEBOEUF LLP

By: [signature] Dean Hansell

Attorneys for Plaintiff
THE LOS ANGELES GAY AND LESBIAN COMMUNITY SERVICES CENTER